James P. KRAVITZ and Philip Nalibotsky, Individually and t/a Lafayette Associates

v.

HOMEOWNERS WARRANTY CORPORATION and Homeowners Warranty Council of Philadelphia and Suburban Counties and INA Underwriters Insurance Company and Elliot R. Titcher, on behalf of himself and all others similarly situated.

Civ. A. No. 81–4218.

United States District Court, E. D. Pennsylvania.

May 20, 1982.

H. David Kraut, Lausdale, Pa., for plaintiff.

Robert G. Bauer, Robert Boote, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiffs James P. Kravitz and Philip Nalibotsky, home builders trading as Lafayette Associates, brought this action for declaratory and injunctive relief seeking to rescind a set of agreements arising out of their participation in the National Home Warranty Program (the "HOW Program") developed by one of the defendants, Homeowners Warranty Corporation ("HWC"). The complaint names four defendants— HWC; Homeowners Warranty Council of Philadelphia and Suburban Counties (the "Local Council") which administers the HOW program in the Philadelphia area; the Insurance Company of North America ("INA") which underwrites the program; and Elliot Titcher, who is sued both as an individual purchaser of a home built by plaintiffs and covered by the program, and on behalf of all other similarly situated home buyers. The defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and, alternatively, under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Under the HOW program, participating home builders provide home buyers with a written warranty guaranteeing that the purchased home has been constructed in accordance with standards of workmanship established by the program. Initially, plaintiffs entered an agreement with the Local Council which provided for the registration with the Council of homes built by plaintiffs and inspection of those homes. This agreement also recited the builder's obligation to construct registered homes according to HWC-approved standards and set forth the builder's warranty obligations to home purchasers. Plaintiffs then sold a number of homes to purchasers such as defendant Titcher which were covered by Home Warranty Agreements. Under these agreements, plaintiffs promised to repair, replace or pay the reasonable cost of repair-

ing or replacing any defective item covered by the warranty. The agreement also set forth the procedures available to purchasers for notifying the builder of any defects, and described the procedure for conciliation and arbitration of any resulting disputes between purchaser and builder. In addition, the agreement noted that the warranty obligations of the builder were secured by the insuror, defendant INA, against default, and that in case of such a default and subsequent payment by INA, the purchaser agreed to assign its claim against the builder to INA.

A number of purchasers of homes built by plaintiffs, including defendant Titcher, have claimed defects in the homes; plaintiffs have disputed these claims and apparently have not made any payments or repairs. Following plaintiffs' default, INA undertook according to the HOW program to bear the cost of making necessary repairs. As subrogee to the contractual claims of these purchasers, INA has filed a related civil action against plaintiffs, No. 81–4545, which has also been assigned to my docket.

### I.

Plaintiffs assert that jurisdiction is based on 28 U.S.C. §§ 1331 and 1337, arguing that this is a case which "arises under the Constitution, laws or treaties of the United States."[1] Defendants contend that plaintiffs have simply stated a claim for rescission under state law which does not raise any federal question that may serve as a basis for this court's jurisdiction.

■ To rule on defendants' motion, it is important to appreciate plaintiffs' claim in some detail. Plaintiffs seek a declaration that the June 14, 1978 agreement with the Local Council is rescinded and that the home warranty agreements it entered with various home purchasers are rescinded. Further, plaintiffs seek restitution of all payments made to defendants to participate

---

1. Because the courts have interpreted the "arising under" language in §§ 1331 and 1337 interchangeably, I will treat the jurisdictional question as the same for both sections. *See Serio v. Liss*, 300 F.2d 386, 388 n.3 (3d Cir. 1961).

in the program, and an injunction preventing defendants from seeking to recover any judgment on the warranty agreements undertaken by plaintiffs. Reduced to its essentials, plaintiffs' claim appears to be (a) that defendants HWC and the Local Council induced plaintiffs to participate in the HOW program by representing that the warranties provided for under the program complied fully with the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and regulations promulgated by the Federal Trade Commission under that Act; (b) that such representation was false in that the terms of the HOW program providing for arbitration binding on the builder-warrantor differ from FTC regulations which provide only for non-binding arbitration, 16 C.F.R. § 703.5(i); and finally (c) that such false representations as to a material fact on which plaintiffs relied entitles plaintiffs unilaterally to rescind the contract. Seen in this way, plaintiffs' assertions represent a straightforward claim under the doctrine of fraud which generally provides that if the party seeking rescission has tendered an offer of rescission within a reasonable time which has been rejected, and is able to demonstrate a false representation of a material fact constituting an inducement to enter a contract, the court, exercising its equitable power, may rescind the contract—declaring it to be null and void. The court may then award restitution so that the parties are restored to the *status quo ante* as if the fraudulent contract had never been made. *See Adelman v. CGS Scientific Corp.*, 332 F.Supp. 137, 146 (E.D.Pa.1971); *Dunsmore v. Criville*, 34 D. & C.2d 337, 83 Montg. 246 (1963).

Plaintiffs' cause of action is rooted in the law of Pennsylvania. The ground for characterizing this Pennsylvania case as one which "arises under the . . . laws . . . of the United States" is that an essential element of plaintiffs' "right to relief depends upon the construction of the . . . laws of the United States. . . ." *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199, 41 S.Ct. 243, 245, 65 L.Ed. 577 (1921). For, as our Court of Appeals declared in *Lindy v. Lynn*, 501 F.2d 1367, 1369 (1974), "[a]n action arises under the laws of the United States if . . . it requires the construction of a federal statute. . . ." But of course the Court of Appeals did not mean to suggest that *every* case which "requires the construction of a federal statute" is a federal question case. Thus, in *Moore v. Chesapeake & Ohio Ry.*, 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1939), the Court held that a law suit for injuries suffered by the plaintiff while engaged in intrastate commerce, presenting claims pursuant to the Kentucky Employers' Liability Act, was not a federal question case, notwithstanding that the plaintiff alleged that defendant's train did not satisfy the requirements of the Federal Safety Appliance Act—an allegation of potentially decisive legal consequence for the reason that the Kentucky Employers' Liability Act precluded the defenses of contributory negligence and assumption of risk " 'where the violation by such common carrier of any statute, state or federal, enacted for the safety of employees, contributed to the injury or death of such employee.' " 291 U.S. at 212–13, 54 S.Ct. at 404–05. The Court pointed out that in a case of that sort brought in a state court, questions "relating to the scope or construction of the Federal Safety Appliance Acts are, of course, federal questions which may be appropriately reviewed in this court. But it does not follow that a suit brought under the state statute which defines liability to employees who are injured while engaged in intrastate commerce, and brings within the purview of the statute a breach of the duty imposed by the federal statute, should be regarded as a suit arising under the laws of the United States and cognizable in the federal court in the absence of diversity of citizenship." 291 U.S. at 214–15, 54 S.Ct. at 405–06 (citations omitted).

Perhaps the explanation of *Moore* is that it was perceived by the Court as kin to the myriad cases holding that a plaintiff cannot frame a state-law claim as an "arising under" case by anticipating a defense based on federal law. *See H. Hart & H. Wechsler, The Federal Courts and the Federal*

*System*, 883–90 (2d ed. 1973).[2] If *Moore* is thus narrowly read, the present case might be classifiable as one in which plaintiffs' claim "requires the construction of a federal statute." However, while I acknowledge that such a classification would be defensible under the relevant case law, I would add that I cannot identify any compelling reasons of federal judicial policy for embracing a case of this kind as a federal question case. The essential Pennsylvania elements of plaintiffs' suit for rescission would be more appropriately dealt with by a Court of Common Pleas than by this court; and, with respect to the lesser-included issue of federal law, Pennsylvania's courts are fully competent to interpret the Magnuson-Moss Warranty Act and the relevant F.T.C. regulations, subject to review by the United States Supreme Court. Nonetheless, I will assume *arguendo* that the complaint in this case does state a proper "arising under" claim. I make this assumption because it permits me to address what I regard as a far simpler question— the viability of plaintiffs' complaint. To that question I now turn.

## II.

In ruling on a motion to dismiss, a court must, of course, assume the truth of the matter alleged in the complaint. Making that assumption in this case, I am nevertheless persuaded that plaintiffs' complaint must be dismissed for failure to state a claim upon which the relief requested may be granted.

■ As to defendants INA and Titcher, this seems particularly clear, since there is no allegation that these parties made any representation, fraudulent or otherwise, to plaintiffs which was an inducement to enter the contracts at issue. Plaintiffs never allege, nor does it appear likely that they could allege, that INA or Titcher made any representations concerning the compliance of the program with the FTC regulations.

Accordingly, plaintiffs' claims against INA and Titcher, both as an individual and as a putative class representative, will be dismissed with prejudice.

■ With respect to defendants HWC and the Local Council, the situation is somewhat different. In my view, even though there may be some federal question concerning the relationship between the FTC regulations and the HWC home warranty contract, no ground for the rescission relief requested by plaintiffs has been asserted in the present complaint.

Plaintiffs' complaint alleges that defendants represented that the home warranty program "would place such builders [as plaintiffs] in full compliance with the provisions of the Magnuson-Moss Warranty Act ..." and that the "program was being operated in accordance with the requirements of the Act and the regulations of the FTC issued pursuant thereto." Complaint at ¶ 11. As noted earlier, to enforce a claim for rescission under Pennsylvania law, plaintiffs would have to establish that such representations were false. *See Adelman, supra.* Plaintiffs, of course, allege that defendants' representations were false in that the HWC program called for seller-binding arbitration whereas the FTC regulations called for non-binding arbitration. *See* Complaint at ¶'s 14–18. For defendants' representations to be considered "false," it would clearly be necessary for plaintiffs to show that they face potential liability for the noncompliance of their warranty with the requirements of the Magnuson-Moss Act or the FTC regulations as a result of the asserted variance. Examination of the Magnuson-Moss Act demonstrates the defects in plaintiffs' complaint.

The Magnuson-Moss Act is essentially a "remedial statute designed to protect consumers from deceptive warranty practices." *Skelton v. General Motors Corp.*, 660 F.2d 311, 313 (7th Cir. 1981). *See generally* Schroeder, *Private Actions under the Mag-*

---

2. For other leading contributions to the literature, see Mishkin, *The Federal "Question" in the District Courts*, 53 Colum.L.Rev. 157 (1953); London, *"Federal Question" Jurisdic-* *tion—A Snare and a Delusion*, 57 Mich.L.Rev. 835 (1959); Cohen, *The Broken Compass: The Requirement That a Case Arise "Directly" Under Federal Law*, 115 U.Pa.L.Rev. 890 (1967).

*nuson-Moss Warranty Act*, 66 Cal.L.Rev. 1, 2–3 (1978). To achieve this goal, the Act establishes minimum disclosure requirements for warrantors; minimum requirements for the form, content and coverage of warranties; and mechanisms for private and public enforcement. Section 110(d)(1) of the Act, 15 U.S.C. § 2310(d)(1), provides a private cause of action for consumers of products covered by warranties who have been injured by any breach of warranty obligations or violations of obligations created by the Act. In addition, section 110 of the Act permits the FTC or Attorney General to institute an action for injunctive relief to prevent unfair trade practices or warranty deceptions.

An initial difficulty for plaintiffs is that it is doubtful that the Act applies to warranties of the sort established under the HOW program. The coverage of the Act is plainly limited in that the Act's requirements only extend to warranties for "consumer products." 15 U.S.C. §§ 2301(1); 2302(a). The FTC regulations defining the scope of this protection make clear that the Act is restricted to "tangible personal property which is normally used for personal family or, household purposes," 16 C.F.R. § 700.1(a), and that, therefore, warranties covering real property such as a home do not fall within the scope of the Act:

> (e) The coverage of building materials which are not separate items of equipment is based on the nature of the purchase transaction. An analysis of the transaction will determine whether the goods are real or personal property. The numerous products which go into the construction of a consumer dwelling are all consumer products when sold "over the counter," as by hardware and building supply retailers. This is also true where a consumer contracts for the purchase of such materials in connection with the improvement, repair, or modification of a home (for example, paneling, dropped ceilings, siding, roofing, storm windows, remodeling). However, where such products are at the time of sale integrated into the structure of a dwelling they, are not consumer products as they cannot be

practically distinguished from realty. *Thus, for example, the beams, wallboard, wiring, plumbing, windows, roofing, and other structural components of a dwelling are not consumer products when they are sold as part of real estate covered by a written warranty.*

> (f) In the case where a consumer contracts with a builder to construct a home, a substantial addition to a home, or other realty (such as a garage or an in-ground swimming pool) the building materials to be used are not consumer products. Although the materials are separately identifiable at the time the contract is made, it is the intention of the parties to contract for the construction of realty which will integrate the component materials. Of course, as noted above, any separate items of equipment to be attached to such realty are consumer products under the Act.

16 C.F.R. § 700.1(e)–(f) (emphasis added). Because the parties have not fully briefed the question, I am reluctant to hold that, as a matter of law, the Magnuson-Moss Act does not apply to warranties such as the HOW program. Nevertheless, the apparent exclusion of warranties covering homes from the Act's coverage reinforces my view that plaintiffs have failed in the present complaint to allege any basis for their assertion that defendants' representations concerning the Act are false or misleading.

If, counter-intuitively, one assumes that the Act is applicable to warranties of the sort at issue here, the policy the Act enunciates and the remedies it provides show that in any event plaintiffs do not face any potential liability under the Act and therefore there is no proper basis for finding defendants' representations to be false.

An important policy of the Act is to "encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C. § 2310(a)(1). In addition, the Act delegates authority to the FTC to promulgate rules setting forth minimum requirements for an

informal dispute settlement mechanism established by a warrantor. *Id.* at § 2310(a)(2). These rules are published in 16 C.F.R. Part 703. Section 703.5(j) of those rules provides: "Decisions of the [informal dispute settlement] mechanism shall not be legally binding on any person. However, the warrantor shall act in good faith, as provided in § 703.2(g) of this part." By contrast the HOW agreement, which plaintiffs seek to rescind, provides as follows:

Disputes between Builder and Purchaser arising under the Home Warranty Agreement may be referred to Local Council for conciliation in accordance with procedures established or to be established by Local Council. If such conciliation does not result in a prompt settlement of the dispute, upon request by either Purchaser or Builder, accompanied by the required deposit, the dispute shall be referred by Local Council to arbitration. The final decision of the arbitrator shall be final and binding upon Builder and Purchaser (to the extent permitted by law) *and Builder agrees to comply with the decision of the arbitrator within 60 days following an arbitrator's award in favor of Purchaser.*

Agreement of Builder and Local Warranty Council, Article VI(1)(a) (emphasis added).

In general, a warrantor who establishes a qualified mechanism for informal dispute settlement may require in the written warranty that such procedures be exhausted before a consumer may file suit against the warrantor. 15 U.S.C. § 2310(a)(3)(i). However, the Act appears to permit the FTC or a consumer to seek judicial review of the fairness and efficacy of a mechanism established by the warrantor. *See Schroeder, supra,* at 25 n.134; 15 U.S.C. § 2310(a)(4). If the reviewing court finds the procedures to be unfair or not in compliance with the minimum FTC requirements, the consumer would not be required to exhaust the informal procedures as a condition precedent to his right to sue. *Id.* But plaintiffs' conclusory allegation that

the HOW program differs from the FTC minimum requirement does not make clear why a reviewing court would find the HOW arbitration provisions unfair, ineffective or in violation of the Act. Indeed, to the extent there is a variance, it clearly favors the consumer-protection policies of the Act and ensures that the informal dispute settlement procedures created in the HOW program will provide a fair, effective remedy for consumers. The complaint fails to assert any basis for relief, since the mere fact that plaintiffs agreed to a warranty program for their purchasers that provides *more* protection for consumers than the minimum FTC requirement does not appear to provide a basis for a claim of noncompliance by a consumer or the FTC, or a reason to invalidate the entire agreement.

Finally, the particular assertions of fraudulent misrepresentation contained in plaintiffs' complaint also appear to fall far short of stating a cognizable claim under the doctrine of fraud. The only misrepresentation alleged in plaintiffs' complaint relates to defendants' assertion that the HOW program complied, as a matter of law, with the requirements of the Magnuson-Moss Act. The doctrine of fraud which plaintiffs invoke, however, is generally designed to police misrepresentations of material *fact* which may mislead contracting parties. *See Adelman v. CGS Scientific Corp., supra.* By contrast, plaintiffs' assertions concern only a pure question of law—whether the HOW program complied with the Magnuson-Moss Act. At the time plaintiffs entered the HOW contract with defendants, it was open to them to refer this legal question to their own counsel. Clearly, neither the contractual terms nor the legal requirements of Magnuson-Moss were "facts" in the exclusive possession of defendants. Instead, plaintiffs' ability to consider the legal issue of the HOW program's compliance was substantially equivalent to defendants' position. Their failure to obtain the advice of counsel as to a purely legal conclusion cannot now be made the predicate for a claim of fraudulent misrepresentation.

Accordingly, defendants' motion to dismiss with respect to defendants HWC and the Local Council will also be granted.[3]

---

**3.** I have decided to grant defendants' motion to dismiss with prejudice because this does not appear to be a case in which amendment or discovery will permit plaintiffs to bolster their claims sufficiently so as to survive a further motion to dismiss. Therefore, while recognizing the liberal notice pleading policy of the federal rules, *Conley v. Gibson*, 355 U.S. 41, 47-48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957), I am satisfied that plaintiffs' complaint is so clearly inadequate and the possibility of curing those defects so remote that considerations of efficiency require dismissal with prejudice rather than permitting amendment. *Cf. Cardio-Medical Associates, Ltd. v. Crozer-Chester Medical Center*, 536 F.Supp. 1065, 1071–73 (E.D.Pa.1982). Moreover, the merits, if any, of the contentions presented in plaintiffs' present complaint may be more properly raised and tested as defenses to the claims asserted by INA in the related action, No. 81–4545, which has been assigned to my docket.