Steven Gary STEGAN, et al.,
Plaintiffs-Respondents,

v.

H. W. FREEMAN CONSTRUCTION CO.,
INC., Defendant-Appellant.

No. 44505.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 4, 1982.

Steven A. Cox, Donna L. Head, Fenton, for defendant-appellant.

Marc Sandberg, St. Louis, for plaintiffs-respondents.

DOWD, Presiding Judge.

Defendant appeals from a jury verdict and judgment awarding plaintiffs money damages of $2500 for breach of implied warranty of fitness for use. We affirm.

In May, 1968, plaintiffs Steven and Jean Stegen purchased a lot and single-story house from defendant. On January 1, 1977, the Stegens' house was without water service. Since the temperature was very low, Mr. Stegen suspected the water service line had frozen. He tried unsuccessfully to get a plumber and then began digging in his yard to find the problem. When he found the "T" shutoff valve, Mr. Stegen deter-

mined the frozen portion of the pipe lay between that valve and the water main. He eventually located the water main across the street in his neighbor's yard, forty-two inches below ground level. Digging between the street and the sidewalk in front of the neighbor's house, he discovered that part of the water line connecting his house to the water main was only twelve inches underground.

Plaintiffs contacted defendant several times regarding the frozen pipe. The construction company finally sent some workers who built fires in the holes Stegen had dug, but the pipe did not thaw. After two weeks without water service, Mrs. Stegen and the three children moved out of their home to stay with relatives. On January 19, a plumber brought a welding machine that thawed the pipe in twenty-three hours. Plaintiffs paid the plumber $200. A plumbing contractor later estimated at $2000 the cost to permanently correct the water line problem.

During the twenty days without water, plaintiffs' additional expenses included $25 for laundry, $110 for meals and water, and $30 for barricades for the holes. The children missed three days of school. Over a five day period with temperatures between ten degrees below and ten degrees above zero, Mr. Stegen spent about thirty hours digging frozen ground. To do this he took three days of vacation from his job, which paid $45 per day. After informing the purchasers of the water line problem, plaintiffs sold their home in 1978.

■■■ Defendant first contends the trial court erred in not submitting plaintiffs' case to the jury on the theory of breach of a building contract. Defendant maintains that plaintiffs' verdict director,[1] patterned on MAI 25.03 and MAI 11.05, was improper. Because defendant failed to set forth the challenged instruction in its brief in accordance with Rule 84.04(e), it has not preserved the point for appellate review. *Sewell v. MFA Mut. Ins. Co.,* 597 S.W.2d 284, 290 (Mo. App. 1980). Furthermore, since the record on appeal does not contain defendant's suggested verdict director, we cannot determine whether it would have properly instructed the jury. *See* Rule 81.12(a). We have nonetheless considered defendant's argument and find that it is without merit.

Defendant relies on *Ribando v. Sullivan,* 588 S.W.2d 120 (Mo. App. 1979), a construction defect case arising from a contract to build a house. The court found under those facts that the trial court properly instructed the jury on breach of contract. *Id.* at 123. Defendant incorrectly asserts that, because its president testified defendant contracted with plaintiffs to build the house, *Ribando* controls the instant case.

■■■ In reviewing the trial court's submission of an instruction, we must consider the evidence and reasonable inferences therefrom in a light most favorable to plaintiffs, the offering party. *Ramsey v. Vance,* 622 S.W.2d 774, 777 (Mo. App. 1981). Defendant's evidence will be disregarded unless it tends to support the grounds for submitting the instruction. *Id.* Plaintiffs' testimony and defendant's Answer to Request for Admissions reveal that plaintiffs purchased a completed home. The doctrine of *Smith v. Old Warson Development Co.,* 479 S.W.2d 795 (Mo. banc 1972), therefore applies. That doctrine assigns liability for latent structural defects to the builder-vendor of a new house under an implied warranty of fitness for use. *Id.* at 798–99.

1. Instruction No. 4:
   Your verdict must be for plaintiffs if you believe:
   First, defendant sold a residence to plaintiffs, and
   Second, the defendant knew or should have known by using ordinary care of the use for which plaintiffs purchased the residence, and
   Third, plaintiffs reasonably relied upon defendant's judgment as to the fitness of the residence for such use, and
   Fourth, the residence was not fit for such use, and
   Fifth, as a direct result, plaintiffs were damaged.
   The term "ordinary care" as used in this instruction means that degree of care that an ordinary careful and prudent person would use under the same or similar circumstances.

Thus, no error resulted from the court's failure to submit an instruction on breach of a building contract since that theory is inapplicable under the facts of this case.

■ In its second point defendant contends the trial court erred in giving a damages instruction patterned on MAI 4.01 rather than one patterned on MAI 4.02. This point is not preserved for appellate review because defendant failed to set forth the challenged instruction in its brief. Rule 84.04(e); *Sewell v. MFA Mut. Ins. Co.*, 597 S.W.2d at 290. Defendant also failed to include in the appellate record its proffered instruction patterned on MAI 4.02. *See* Rule 81.12(a). We have reviewed the submitted instruction,[2] however, and find no error.

■ Although reasonable expenses proximately resulting from damage to property are usually a proper element of recovery, they are not to be classified as property damage. *City of Kennett v. Akers*, 564 S.W.2d 41, 50 (Mo. banc 1978). Use of MAI 4.02 is limited to cases involving property damage only. MAI 4.02, Note on Use 2. That instruction's measure of damages is the difference between fair market value before and after the occurrence plus compensation for loss of use. 564 S.W.2d at 50. MAI 4.02 is not applicable where, as here, the damages sought include items not measurable by before and after value or by cost of repair. *Id.* Moreover, the use of MAI 4.01 does not require that personal injuries be part of the consequential damages sought. *Groppel Co., Inc. v. United States Gypsum Co.*, 616 S.W.2d 49, 63 (Mo. App. 1981). The trial court properly gave the more general damage instruction, MAI 4.01.

■ Defendant next contends that the court should have sustained its motion for a directed verdict because plaintiffs failed to prove damages by not showing diminution of value or cost of repair. Those, however, are elements of damage required to be proved under an MAI 4.02 pattern instruction. *See Ribando v. Sulli-*

van, 588 S.W.2d at 124. As previously stated, plaintiffs here sought and proved damages for items not susceptible to such measurement, and MAI 4.02 is thus inapplicable. Furthermore, plaintiffs' evidence showed that they obtained an estimate of $2000 to correct the improperly installed water service line and that they sold their house after giving notice of the defect to the purchasers. In any event, failure to prove the full amount of damages does not justify a directed verdict. *Id.* at 125.

■ In connection with the denial of its motion for directed verdict, defendant also asserts that plaintiffs failed to prove defendant was responsible for installing the water service line or that installation occurred in an unworkmanlike manner. We disagree. Harry W. Freeman, the construction company's president, testified that defendant subcontracted the plumbing for plaintiffs' house. Whether the plumbing defect resulted from the activities of defendant alone or those of an independent contractor used by defendant would not affect defendant's liability in this case. *Smith v. Old Warson Development Co.*, 479 S.W.2d at 801. In addition, Mr. Freeman testified that a water service pipe from a house to the water main is supposed to be installed below the frost line, which is forty-two inches underground. The point is without merit.

■ Defendant's next contention concerns the admission into evidence of St. Louis County, Mo., Plumbing Code § 1103.-440(9)(a) (1964), which provides that water service pipes shall be placed at a depth of at least forty-two inches. Defendant first argues that the trial court erred in admitting the ordinance since it was not pleaded in haec verba or in substance as required by *Schmitt v. City of Hazelwood*, 487 S.W.2d 882, 886 (Mo. App. 1972). While defendant correctly cites the general rule for pleading ordinances, the petition need not set out an ordinance used merely as evidence and not

2. Instruction No. 5:
    If you find in favor of plaintiffs, then you must award plaintiffs such sum as you believe will fairly and justly compensate plain-

tiffs for any damages you believe they sustained *as a direct result of the conduct of defendant* as submitted in Instruction No. 4.

as the basis for the cause of action. *Hart v. Skeets,* 346 Mo. 1118, 145 S.W.2d 143, 144 (1940). We agree, however, with the trial court's assessment that the ordinance was pleaded in substance and that the petition gave defendant notice of the alleged violation. Although defendant argues the ordinance was irrelevant, violation of a building code may be relevant to, though not conclusive of, the issue of fitness for habitation. *Sands v. R.G. McKelvey Bldg. Co.,* 571 S.W.2d 726, 732 (Mo. App. 1978). The water service pipe in question was twelve inches underground. The ordinance requiring such a pipe to be forty-two inches underground was relevant since it tended to establish that the pipe was installed in an unworkmanlike manner. *See Charles F. Curry & Co. v. Hedrick,* 378 S.W.2d 522, 536 (Mo. 1964); *Alexander v. Estate of Groves,* 618 S.W.2d 233, 235 (Mo. App. 1981). That fact in turn tends to support plaintiffs' claim that improper installation of the pipe caused cessation of the water supply and rendered the house not reasonably fit for use as a residence. Contrary to defendant's claim, admission of the ordinance did not serve to confuse the issues in the case. Defendant also challenges plaintiffs' foundation for admission of the ordinance, but Section 490.240, RSMo 1978 provides that a certified and sealed copy of an ordinance shall be received as evidence without further proof. Plaintiffs introduced a certified and sealed copy, thus the foundation was proper. Because the ordinance was properly admitted into evidence, the trial court did not abuse its discretion in allowing plaintiffs' attorney to refer to the ordinance in opening statement. *See Cantrell v. Superior Loan Corp.,* 603 S.W.2d 627, 641–42 (Mo. App. 1980).

Defendant contends finally that denial of its motion for new trial was error because the verdict was so grossly excessive as to show bias, passion or prejudice on the part of the jury or, in the alternative, because the verdict was excessive and a remittitur of $2000 is required. We disagree.

The size of the verdict does not in and of itself establish that it resulted from bias or passion and prejudice without showing some other error committed at trial. *Blevins v. Cushman Motors,* 551 S.W.2d 602, 615 (Mo. banc 1977); *Skadal v. Brown,* 351 S.W.2d 684, 690 (Mo. 1961); *Larson v. Alton and Southern Railroad Co.,* 431 S.W.2d 687, 692 (Mo. App. 1968). Defendant does not point to an error at trial which would indicate bias, passion or prejudice. In addition, the jury has broad discretion in awarding damages, and this award was supported by substantial evidence. *Arkansas-Missouri Power Co. v. Haines,* 592 S.W.2d 883, 885–86 (Mo. App. 1980). The trial court properly denied the motion for new trial and remittitur is not required.

Judgment affirmed.

GUNN, C.J., and CRANDALL, J., concur.