Thomas P. MUCHISKY, Plaintiff–Respondent,

v.

FREDERIC ROOFING COMPANY, INC., Defendant–Appellant.

No. 60669.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 4, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Sept. 14, 1992.

Application to Transfer Denied
Oct. 27, 1992.

James E. Godfrey, Jr., Godfrey & Fenlon, St. Louis, for defendant-appellant.

Jeffrey J. Lowe, Gray & Ritter, P.C., St. Louis, for plaintiff-respondent.

SMITH, Presiding Judge.

This appeal follows a judgment for homeowner, Thomas P. Muchisky, against contractor, Frederic Roofing Co., Inc. The suit involved a contract to re-roof the Muchisky home with one layer of U.S. Intec[1] Brai/Flex, modified bitumen, single ply system. After contractor installed the roof and made two attempts at remedial work, homeowner filed a three count petition. Count I alleged breach of contract. Count II alleged breach of warranty. Count III alleged a violation of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301. Contractor counterclaimed alleging breach of contract for failure to pay the agreed price. All the claims were submitted to the jury which found in favor of homeowner on each claim and awarded $10,000 as damages on each claim. It additionally awarded $11,200 as attorney's fees on Count III. The court entered judgment in favor of homeowner for $10,000 damages and $11,200 attorney's fees under Verdict A, which found for homeowner on Count III, the Magnuson–Moss breach of written warranty claim. To avoid duplicity the court did not enter judgments on verdicts for homeowner on the alternative counts.

Contractor appeals presenting nine points of alleged error for our consideration. Briefly summarized, contractor challenges the sufficiency of the evidence, as well as the verdict directing and damage instruction for each of homeowner's three counts, and the judgment entered by the court. Taken with the case is homeowner's motion for attorney's fees on appeal. We affirm the judgment on Count III, making review of Counts I and II unnecessary. Homeowner's motion for fees is granted in the amount of $5,856.00.

Homeowner solicited a bid from contractor to re-roof his home. Contractor submitted a written offer of $8,272. Homeowner made a counter offer by letter which specified terms of performance and incorporated the provisions of contractor's offer by reference. Contractor pencilled in modifications. Homeowner accepted contractor's counter offer. The contract included a twelve year warranty guaranteeing the completed roof would be free from defects in workmanship and materials. Contractor guaranteed the first two years. U.S. Intec, the materials manufacturer, guaranteed the next ten.

Contractor re-roofed home on March 21, 1988. Homeowner called contractor back for remedial work. Still unhappy, homeowner sent a letter to contractor outlining his concerns. He also sent a partial payment of $4,000. Contractor worked on remedial repairs a second time. On August 16, 1988, homeowner notified contractor by letter that he was not satisfied with the re-roofing and was denying contractor further access to his home.

Contractor in its first point asserts:

THE COURT ERRED IN REFUSING TO DIRECT A VERDICT AT THE CLOSE OF ALL THE EVIDENCE AS TO THE COUNT ASSERTED UNDER THE MAGNUSON–MOSS ACT BECAUSE THE CONTRACT SUED UPON WAS A SERVICES CONTRACT, NOT A SALES CONTRACT, AND BEING A SERVICES CONTRACT, THE PROVISIONS OF MAGNUSON MOSS DO NOT APPLY, AND THE COUNT BASED UPON MAGNUSON MOSS WAS ILL FOUNDED AS A MATTER OF LAW.

Contractor invites us to apply a U.C.C. dominant element test for a "transaction in goods," to the case at bar. Contractor has presented no authority supporting application of the test to define a "consumer product" under the Magnuson–Moss Act. Furthermore, the definition of "goods" in U.C.C. § 2–105 and § 400.2–105 RSMo is not parallel to the definition of "consumer product" as defined by 15 U.S.C. § 2301(1).

**1.** The day of trial Plaintiff Muchisky and defendant U.S. Intec dismissed with prejudice their claims against each other and defendants U.S. Intec and Frederic Company dismissed with prejudice their cross-claims against each other. U.S. Intec is not a party to this appeal.

 Homeowner argues the regulations promulgated by the Federal Trade Commission demonstrate the warranty given by contractor is covered by the Act.[2] Here also, homeowner does not cite authority for his position. We find no authority and conclude this is an issue of first impression. The issue is whether the re-roofing of a home is a "consumer product" as defined by the Magnuson–Moss Act so that an action based upon a written contract for re-roofing of a home may lie as a matter of law where the written contract contains a twelve year defect-free warranty on workmanship and materials.

The section under which homeowner brought this action provides in pertinent part[3]:

15 U.S.C. § 2310(d)(1):

... a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—

(A) in any court of competent jurisdiction in any State or the District of Columbia;

\* \* \* \* \* \*

(2) If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended)....

For purposes of this chapter:

15 U.S.C. § 2301(1):

(1) the term "consumer product" means *any tangible personal property* which is distributed in commerce and which is normally used for personal, family, or household purposes (*including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed* ).

\* \* \* \* \* \*

(3) The term "consumer" means a buyer (other than for purposes of resale) of *any consumer product,* any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

(4) The term "supplier" means any person *engaged in the business of making a consumer product directly or indirectly available to consumers.*

The relevant regulations are:

16 CFR:

§ 700.1 Products covered.

(a) The Act applies to written warranties on *tangible personal property* which is normally used for personal, family, or household purposes. *This definition includes property which is intended to be attached to or installed in any real property without regard to whether it is so attached or installed.* This means that a product is a "consumer product" if the use of that type of product is not uncommon. The percentage of sales or the use to which a product is put by any individual buyer is not determinative. For example, products such as automobiles and typewriters which are used for both personal and commercial pur-

---

**2.** The parties have treated the regulations of the FTC as evidencing the meaning of the statute although they differ on what meaning to draw from the regulations. The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight. *Foremost–McKesson, Inc. v. Davis,* 488 S.W.2d 193 (Mo. banc 1972) [1–4]; *Chemical*

*Manufacturers Association v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985) S.Ct. [1, 2]. We will similarly treat the regulations as correctly interpreting the intention of Congress.

**3.** All emphasis in statute or regulations is ours.

poses come within the definition of consumer product. *Where it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage.*

\* \* \* \* \* \*

(c) The definition of "Consumer product" limits the applicability of the Act to *personal property, "including any such property intended to be attached to or installed in any real property* without regard to whether it is so attached or installed.

\* \* \* \* \* \*

(e) The coverage of building materials which are not separate items of equipment is *based on the nature of the purchase transaction. An analysis of the transaction will determine whether the goods are real or personal property.* The numerous products which go into the construction of a consumer dwelling are all consumer products when sold "over the counter," as by hardware and building supply retailers. *This is also true where a consumer contracts for the purchase of such materials in connection with the improvement, repair, or modification of a home (for example, paneling, dropped ceilings, siding, roofing, storm windows, remodeling). However, where such products are at the time of sale integrated into the structure of a dwelling they are not consumer products as they cannot be practically distinguished from realty. Thus, for example, the beams, wallboard, wiring, plumbing, windows, roofing, and other structural components of a dwelling are not consumer products when they are sold as part of real estate covered by a written warranty.*

(f) In the case where a consumer contracts with a builder to construct a home, a substantial addition to a home, or other realty (such as a garage or an in-ground swimming pool) the building materials to be used are not consumer products. Although the materials are separately identifiable at the time the contract is made, *it is the intention of the parties to contract for the construction of realty which will integrate the component materials.* Of course, as noted above, any separate items of equipment to be attached to such realty are consumer products under the Act.

Homeowner relies on 16 CFR § 700.1(e) for his position that the transaction is covered by the Magnuson–Moss Warranty Act because the re-roofing work was done for the improvement and repair of his home.

The House Report on the Act states:

Under concepts of property law, fixtures such as hot water heaters and air conditioners when incorporated in a dwelling become a part of the real property. It is intended that the provisions of [the Act] continue to apply to such products regardless of how they are classified [under traditional common law distinctions].

H.Rep. No. 1107, 93rd Cong.2d Sess., reprinted in 1974 *U.S.Code Cong. & Admin.News* 7702, 7717.

It is apparent that the Congress intended to have the act cover some items which normally or usually become a part of real estate under commonly applied rules of property law. It is also apparent that it was not the intent of Congress to have the act apply to transactions involving the sale of real estate. The FTC regulations carry forward this intent. Neither the statute nor the regulations have sufficient clarity to remove the case before us from the realm of doubt.

It is apparent from the FTC regulations that products intended to be attached to or installed in any real property are consumer products subject to the act. Section 700.-1(e) attempts to specify what products which become a part of the realty are consumer products and which are not. If the consumer contracts for the purchase of such materials in connection with the improvement, repair or modification of a home (including roofing) then the materials are consumer products subject to the act. However, if *at the time of sale* the prod-

ucts are integrated into the structure of the dwelling, they are not consumer products as they cannot be practically distinguished from realty. The succeeding subsection provides that where the consumer contracts with a builder to construct a home or a substantial addition to a home or similar types of structures, it is deemed to be the intention of the parties to contract for the construction of the realty which will integrate the component materials removing them from coverage under the act.

It appears that as to products which are becoming a part of realty the distinction drawn is whether the product is being added to an already existing structure or whether it is being utilized to create the structure. However, the utilization of the phrase "at the time of sale" in subsection (e) creates some difficulty in the previously articulated distinction. If the "time of sale" is considered to mean when the product is furnished to the consumer and payment is due, a consumer such as plaintiff would normally never have a remedy under the act where he has contracted with a supplier to make a home improvement or repair. The other language of that subparagraph would indicate the contrary. If "time of sale" is interpreted as the time that a binding contract between the consumer and the supplier has been entered into then the consumer would have a remedy under the act because at that time the product warranted has not yet been integrated into the real estate. We believe the latter interpretation is the one intended by the regulations. The presence of subsection (f) indicates that the Commission was utilizing "time of sale" as the entry into a commitment not the completion of the obligation. Otherwise subsection (f) is unnecessary. We further note that any question of whether a product is covered by the act is to be resolved in favor of coverage. Section 700.1(a). We conclude that the roofing here was a consumer product.

■ The evidence here establishes that defendant is a supplier under the definition utilized in the statute and regulation. It is in the business of making a consumer product directly or indirectly available to con-

sumers. It supplied a consumer product—roofing—to a consumer with a written warranty of materials and workmanship. FTC Regulation § 700.1(h) provides that where a written warranty covers both materials and workmanship it is covered by the act. Plaintiff's evidence was sufficient to establish breach of the warranty and failure of the defendant to correct the defects. Plaintiff established its cause of action under the Magnuson–Moss Warranty Act.

Defendant also posits error in giving the verdict-directing instruction on Count III on the basis that the disjunctive alternatives in the instruction hypothesizing the various breaches of the warranty were not established by the evidence. That objection was not raised at trial nor in the motion for new trial. It has not been preserved for review.

■ Defendant also complains of the damage instruction. The Magnuson–Moss Warranty Act authorizes three alternative remedies at the election of the consumer—refund, repair, or replacement. 15 U.S.C. 2301(10). Plaintiff here sought replacement. MAI does not contain an appropriate damage instruction for the damages elected by plaintiff which he could properly select under the statute. The instruction prepared adequately instructed the jury on the damages it should award in this case. We find no error. We also find no error in the damages awarded as they were within the range established by the evidence.

In view of our ruling on the judgment actually entered it is unnecessary for us to address the other points raised by defendant dealing with Counts I and II.

■ Finally, plaintiff seeks attorney's fees on appeal. The statute authorizes the granting of attorney's fees in cases brought under the Act and an award of fees was made in the trial court. We believe they should be allowed on this appeal also. Plaintiff submitted an affidavit of the time expended by counsel on this appeal. Defendant has filed nothing challenging that affidavit. We have examined the times expended on each aspect of the appeal and find them to be reasonable and find counsel's hourly charges to be reason-

able. Attorney's fees of $5,856.00 are added to the judgment.

With that addition the judgment is affirmed.

AHRENS, J., concurs.

KAROHL, C.J., dissents in separate dissenting opinion.

KAROHL, Chief Judge, dissenting.

The judgment entered on Count III which alleged a violation of Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 should be reversed because that statute has no application to the facts of the present case. The damage instruction submitted on Counts I and II misdirected the jury because the instructions were patterned after MAI 4.01 and should have been patterned after 4.02. Accordingly, I would reverse and remand for a new trial on Count I, breach of contract, and Count II, breach of warranty.

In the present case the parties structured a re-roofing agreement on the basis of a total sum for materials and labor. The contract provides: "Work to be done in a first class, workmanlike manner, for the sum of $8,272.00 net. To be paid upon completion of work." Contractor agreed to provide the materials and labor for the installation of the roof for the single price. The contract for $8,272 encompassed the job of re-roofing without reference to a breakdown of component costs for material and labor. Homeowner purchased a roof, not roofing materials. Title to the roofing materials did not pass to homeowner until contractor installed the roof. The materials were an integral part of the home, affixed to land and, therefore, realty when they became the property of homeowner. Prior to their integration into the home, the roofing materials were the tangible personal property of the contractor. Homeowner did not purchase and never owned the roofing materials before they became realty.

Homeowner did not separately purchase any consumer products. Thus, there was no "time of sale" of consumer products. The distinction between purchase of a constructed home and repair or improvements of previously constructed real estate ignores the analysis published by the Federal Trade Commission in 16 CFR § 700.1(e) which directs an analysis based on "the nature of the purchase transaction." This section provides:

The coverage of building materials which are not separate items of equipment is based on the nature of the purchase transaction. *An analysis of the transaction will determine whether the goods are real or personal property.* The numerous products which go into the construction of a consumer dwelling are all consumer products when sold "over the counter," as by hardware and building supply retailers. This is also true where a consumer *contracts for the purchase of such materials* in connection with the improvement, repair, or modification of a home (for example, paneling, dropped ceilings, siding, roofing, storm windows, remodeling). However, where such products are at the time of sale integrated into the structure of a dwelling they are not consumer products as they cannot be practically distinguished from realty. Thus, for example, the beams, wallboard, wiring, plumbing, windows, roofing, and other structural components of a dwelling are not consumer products when they are sold as part of real estate covered by a written warranty. (Our emphasis). 16 CFR § 700.1(e).

Accordingly, a contract for purchase of consumer products may be agreed to where there are detailed specifications calling for a sale of consumer goods in conjunction with a further agreement for their use in construction. In the present case no such agreement was reached by the parties. Frederic Roofing Company agreed for a fixed price to acquire the materials needed and to install them. Plaintiff Muchisky had the benefit of both the manufacturer's warranty and Frederic's warranty. Under these circumstances and on these facts Magnuson–Moss has no application. Homeowner became the owner of roofing materials when installed and made a part of the real estate and not before.

The stated purpose of the statute suggests that it does not apply to these facts. The statute was enacted to provide minimum disclosure standards for written consumer product warranties; to define minimum federal content standards for such warranties; to amend the Federal Trade Commission Act in order to improve its consumer protection activities; and for other purposes not relevant here. Magnuson–Moss was intended to "supplement state warranty law by prescribing certain minimum standards for warrantors, and by affording consumers additional avenues for redress." *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C.Cir.1986).

In general, the Magnuson–Moss Act was designed to protect consumers from deceptive warranty practices. *Kravitz v. Homeowner's Warranty Corp.*, 542 F.Supp. 317, 320 (E.D.Pa.1982). Plaintiff received a verdict in both Missouri common law causes of action, contract and warranty. The existing state law fully protected the homeowner and there were no problems with warranties. *See Clark v. Jim Walter Homes, Inc.*, 719 F.Supp. 1037, 1042 (S.D.Ala.1989). Real property is not covered by the Act. *Id.* at 1043.

It is the nature of the transaction not the nature of the real estate (new or repaired) which must be determined in order to apply or reject Magnuson–Moss. The analysis may apply to new homes or repaired homes. The decisive question is whether the agreement is to purchase goods and to purchase services in which event Magnuson–Moss may apply; or, if the agreement is to purchase a completed project which includes goods and services then the homeowner received the consideration he is entitled to by the agreement when all items of tangible personal property were attached to real estate. Homeowner never owned or purchased consumer goods in this case.

As a matter of preserved error defendant correctly argues a MAI 4.02 damage instruction should have been given on the warranty and contract submissions, not 4.01 as submitted. MAI 4.01 (1980 revision) should be used when both property and consequential damages are sought, while MAI 4.02 (1980 revision) should be used where the only issue is property damage. MAI 4.02, Notes on Use No. 2; *Crank v. Firestone Tire & Rubber Co.*, 692 S.W.2d 397, 402 (Mo.App.1985); *Stegan v. H.W. Freeman Construction Co, Inc.*, 637 S.W.2d 794, 798 (Mo.App.1982). It is sufficient to observe in this dissent that the jury awarded damages which may have exceeded the full benefit of the bargain which may be recovered on either contract or warranty theories. The homeowner argued damages pertaining to both recision and breach of contract. No request was made for consequential damages and there was no offer of any evidence with respect thereto. The damage instruction was wrong on Counts I and II and the error was prejudicial. We should reverse the Magnuson–Moss judgment and remand the warranty and contract claims for a new trial.