[No. H028933. Sixth Dist. Aug. 23, 2006.]

JAMES ATKINSON, Plaintiff and Appellant, v.
ELK CORPORATION OF TEXAS, Defendant and Respondent.

214

COUNSEL

Sharon L. Kinsey for Plaintiff and Appellant.

Burton, Volkmann & Schmal, John S. Burton and Michael A. Miller for Defendant and Respondent.

OPINION

**ELIA, J.**—In this second appeal between these two parties we are asked to decide if roofing shingles purchased by Pacific Coast Roofing (hereinafter Pacific) pursuant to a contract to reroof an existing dwelling for James Atkinson are consumer goods under the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (Pub.L. No. 93-637 (Jan. 4, 1975) 88 Stat. 2183; 15 U.S.C. § 2301 et seq.) (hereinafter Magnuson-Moss). In addition, we must decide whether Atkinson's claim for breach of the implied warranty of merchantability under Magnuson-Moss is barred by the statute of limitations.

### Facts and Proceedings Below[1]

On August 15, 1992, Atkinson contracted with Pacific to reroof his family home. Atkinson chose Prestique I shingles manufactured by Elk Corporation of Texas as the roofing material. The brochure in which the shingles were advertised contained the following language: "When you upgrade to Prestique I *High Definition*, you get the protection and durability to match the beauty. Elk's 30-year limited warranty covers both labor and shingles, plus you get a 5-year limited wind warranty." The last page of the brochure contained a comparison chart of Elk products, including the applicable limited warranties. The warranty for the Prestique I shingles stated that it was "30 years: Material/Labor: 5 years: Wind." However, the brochure did not contain any disclaimers or other limitations and Atkinson did not see or receive any other warranty. When Atkinson went to the building supply facility from where the shingles were purchased, there was no other limited warranty on display, nor was he given one.[2] Based on the written warranty he saw in the brochure, Atkinson instructed Pacific to use Elk Prestique I shingles to reroof his home. Atkinson paid Pacific $7,400 for the reroofing work. Included in that price was the cost of the shingles.[3]

In January 1998, while cleaning the gutters in his roof, Atkinson noticed cracks in many of shingles. Immediately, he contacted Pacific. Pacific contacted Elk. In February 1998, Elk telephoned Atkinson requesting a copy of the contract between Atkinson and Pacific. Atkinson faxed the contract that same day.

In March 1998, Brian Woods from Elk called Atkinson to set up an appointment to visit Atkinson's home in order to take a sample of the

---

[1] The statement of facts is taken from this court's opinion in the first appeal in *Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 744–746 [135 Cal.Rptr.2d 433].

[2] It appears that Elk provides another limited written warranty, with prorated settlement in the case of a manufacturing defect. The written warranty is limited to replacement materials and actual replacement, but does not apply to any tear off of the failed material.

[3] The contract did not break out the costs of materials or the costs for labor.

damaged shingles to be tested and evaluated by Elk. The analysis conducted by Elk revealed that the shingles were defective and had to be replaced.

In April 1998, Atkinson received a letter and check from Elk for $2,949.79. Atkinson called Elk and spoke to Kim Gutierrez. He asked Ms. Gutierrez to explain how Elk arrived at that number. In May 1998, Atkinson received a letter from Ms. Gutierrez explaining that the $2,949.79 was a prorated amount for materials and labor for the shingles applied to his roof in 1992. Atkinson did not respond to Ms. Gutierrez's letter until November 18, 1998.[4] He wrote to Ms. Gutierrez to dispute the settlement amount and return the check. He explained that the settlement amount did not cover the actual cost of materials and labor in his geographic area.

Ms. Gutierrez responded on December 3, 1998. Included with her letter was the original check that Atkinson had returned, and a copy of a lengthy one-page document entitled "Limited Warranty." Atkinson had never seen this "Limited Warranty" before. Between December 1998 and April 1999, Atkinson sought the aid of a consumer legal advocate from a local television station to help his efforts to resolve this matter with Elk.

On April 1, 1999, Atkinson left a message for Linda Frazier, an Elk field service representative. On April 2, 1999, Bonnie Dlabaj, an Elk technical administrative assistant, telephoned Atkinson and informed him that Ms. Frazier was out and that the case was closed. Atkinson asked that Ms. Frazier call him the following Monday.

On April 5, 1999, Ms. Frazier called to say she would reevaluate the settlement. She asked Atkinson to obtain three bids to reroof his home. She asked that the bids be broken down to include the individual costs for tear off, materials and labor. In addition, she requested that the roofers not be allowed to see the roof before they bid. Atkinson obtained three bids as requested.

On July 21, 1999, Atkinson sent a letter to Ms. Frazier with the three bids, which ranged from a low bid of $6,480 to a high bid of $7,350.

On August 16, 1999, Atkinson received a letter from Ms. Frazier offering the same refund as before, $2,949.79. Ms. Frazier stated that according to the terms of the Limited Warranty, Atkinson was not entitled to the cost associated with tear off of the defective shingles, flashings, nails, stuccowork, or any other related costs of replacing the shingles.

Atkinson filed a complaint on December 22, 1999, against Elk and Lyle Thomas doing business as Pacific Coast Roofing. The first cause of action

---

[4] It appears that Atkinson's wife was ill with cancer and Atkinson was preoccupied from May to November.

alleged breach of express warranty under the Song-Beverly Consumer Warranty Act (hereinafter Song-Beverly) (Civ. Code, § 1790 et seq.) against Elk. The second cause of action alleged breach of implied warranty under Song-Beverly against Elk. The third cause of action alleged violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) against Elk and Pacific.[5]

On April 25, 2001, Atkinson filed a motion to amend the complaint to add two causes of action under Magnuson-Moss; a cause of action for fraud; and a cause of action for violations of the Unfair Practices Act. (Bus. & Prof. Code, § 17000 et seq.) At the same time, he moved to continue the trial.

Shortly thereafter, Elk filed a combined opposition to Atkinson's motion to amend and to continue the trial. On May 4, 2001, the court denied both of Atkinson's motions. On May 9, 2001, the trial court heard and ruled on the various pending motions. After considering the argument of counsel, conducting research and, pursuant to the facts as stipulated by both Atkinson and Elk,[6] on its own motion, the trial court ruled that Atkinson was not a buyer of consumer goods within the meaning of Song-Beverly. As such, he did not have standing to assert his two remaining causes of action,[7] thereby entitling Elk to nonsuit.

Atkinson appealed the trial court's ruling. On June 11, 2003, this court issued a published opinion that upheld the trial court's ruling that Atkinson was not a buyer of consumer goods, reasoning that roof shingles are not consumer goods within the meaning of Song-Beverly. (*Atkinson v. Elk Corp.*, *supra*, 109 Cal.App.4th at pp. 751–757.) However, we reversed the trial court's ruling that denied Atkinson the right to file an amended complaint to add allegations under Magnuson-Moss. (109 Cal.App.4th at p. 761.)

Subsequently, on May 20, 2004, Atkinson filed a second amended complaint that included four causes of action. The first cause of action was for breach of express warranty under Magnuson-Moss. The second cause of action was for breach of implied warranty under Magnuson-Moss. The third cause of action was for fraud. Finally, the fourth cause of action was for unlawful and deceptive practices under Business and Professions Code section 17200.

---

[5] Subsequently, Pacific was dismissed from the action on February 2, 2000, and was not a party to the first appeal, or this appeal.

[6] The court asked the parties to enter into a stipulation that Atkinson "entered into an agreement with Pacific Coast Roofing on August the 15th of 1992, and that a true and correct copy" of that contract was attached as exhibit A to Elk's various motions.

[7] The two remaining causes of action were for breach of express warranty under Song-Beverly and breach of implied warranty under Song-Beverly. The cause of action under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) had been dismissed on a motion for summary adjudication on March 28, 2001.

On July 19, 2004, Elk filed a motion for summary judgment or in the alternative summary adjudication contending that the roofing materials purchased from Elk as part of the reroofing of Atkinson's house were not consumer goods within the meaning of Magnuson-Moss. As to Atkinson's second cause of action for breach of implied warranty, Elk argued that it was barred by the statute of limitations.

On October 29, 2004, the trial court heard argument on Elk's summary judgment motion. The court granted Elk's motion as to the first two causes of action, but allowed the third and fourth causes of action to go forward. As to the first cause of action, Commissioner Irwin reasoned that because the contract was for "a lump sum" with no separate charge for materials, and the shingles were incorporated into a dwelling, the shingles were not consumer goods under Magnuson-Moss. As to the second cause of action, Commissioner Irwin reasoned that it was barred because the breach occurred after the expiration of the one-year implied warranty period governed by Civil Code section 1791.1.

Thereafter, on February 4, 2005, Atkinson filed a voluntary dismissal without prejudice of the third cause of action for fraud and fourth cause of action for violation of Business and Professions Code section 17200.[8]

The court entered judgment on April 8, 2005. Atkinson filed his notice of appeal on June 7, 2005. Atkinson raises two issues on appeal. First, he contends that roofing shingles are consumer goods under Magnuson-Moss. Second, he contends that his breach of the implied warranty of merchantability claim under Magnuson-Moss is not barred by the statute of limitations. We agree with Atkinson's first contention, but disagree with the second. Accordingly, we will reverse the summary adjudication of Atkinson's breach of express warranty cause of action and remand for further proceedings.

*Discussion*

In his first assignment of error, Atkinson argues that the roofing materials he "purchased as part of the re-roofing contract with Pacific are consumer goods under Magnuson-Moss."

---

[8] We were concerned that appellant's appeal might violate the one final judgment rule because he dismissed his third and fourth causes of action without prejudice. (See *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 308–309 [63 Cal.Rptr.2d 74, 935 P.2d 781]; *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725 [29 Cal.Rptr.2d 804, 872 P.2d 143]; *Don Jose's Restaurant, Inc. v. Truck Ins. Exchange* (1997) 53 Cal.App.4th 115 [61 Cal.Rptr.2d 370]; *Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422 [77 Cal.Rptr.2d 574].) Accordingly, we asked appellant to show cause why the appeal should not be dismissed. Subsequently, appellant filed a voluntary dismissal with prejudice of the third cause of action for fraud and fourth cause of action for violation of Business and Professions Code section 17200.

As noted, the trial court granted Elk's motion as to Atkinson's first cause of action under Magnuson-Moss, reasoning that because Atkinson's contract with Pacific was for "a lump sum" with no separate charge for materials, and the shingles were incorporated into a dwelling, the shingles were not consumer goods under Magnuson-Moss.

Any party to an action may move for summary adjudication. (Code Civ. Proc., § 437c, subd. (f)(1).) The object of the summary adjudication procedure is to expedite litigation by eliminating the unnecessary trial of claims. (See, e.g., *Catalano v. Superior Court* (2000) 82 Cal.App.4th 91, 96–97 [97 Cal.Rptr.2d 842] [summary adjudication]; cf. *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493] [summary judgment].)

"A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1).) To dispose of a cause of action, the moving party must show that it has no merit. (Code Civ. Proc., § 437c subd. (p)(2).) "A cause of action has no merit if either of the following exists: [¶] (1) One or more of the elements of the cause of action cannot be separately established, even if that element is separately pleaded. [¶] (2) A defendant establishes an affirmative defense to that cause of action." (Code Civ. Proc., § 437c, subd. (*o*).)

To the extent that the decision turns on a legal question, "it is the duty of the trial court on a motion for summary judgment to hear and determine the issue of law. [Citation.]" (*Varni Bros. Corp. v. Wine World, Inc.* (1995) 35 Cal.App.4th 880, 886 [41 Cal.Rptr.2d 740].)

To the extent that the decision turns on factual questions, the trial court assesses the evidence in light of the parties' respective burdens. Ultimately, the moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.) Initially, however, the movant carries the lighter burden of production, which requires only "a prima facie showing of the nonexistence of any triable issue of material fact . . . ." (*Ibid.*) "A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.] No more is called for." (*Id.* at p. 851.) "A burden of production entails only the presentation of 'evidence.' [Citation.] A burden of persuasion, however, entails the 'establish[ment]' through such evidence of a 'requisite degree of belief.' [Citation.]" (*Id.* at p. 850.)

If the moving party makes the necessary initial prima facie showing, the burden of production shifts to the opposing party to make a prima facie

showing of the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); see *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) If the party opposing summary adjudication presents evidence demonstrating the existence of a disputed material fact, the motion must be denied. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 856.)

Throughout this process, "the court must consider all of the evidence and all of the inferences drawn therefrom." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 856.) The moving party's evidence is strictly construed, while that of the opponent is liberally construed. (*Id.* at p. 843.)

If the court summarily adjudicates one or more causes of action of a plaintiff's complaint, trial of the action proceeds only as to the remaining causes of action. (Code Civ. Proc., § 437c, subd. (n)(1).)

On appeal, we review the grant of summary adjudication de novo. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 860 [summary judgment]; *Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819 [44 Cal.Rptr.2d 56] [summary adjudication].) We are not bound by the trial court's stated reasons for its grant of summary judgment. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1143 [97 Cal.Rptr.2d 707].) We review the ruling itself, not the trial court's rationale. (*Ibid.*; accord, *Martinez v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236, 1244 [100 Cal.Rptr.2d 403].)

■ We begin with the well-established principle that statutory construction is a question of law. (*National R.V., Inc. v. Foreman* (1995) 34 Cal.App.4th 1072, 1077 [40 Cal.Rptr.2d 672].) We are mindful that the "fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.]" (*Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) However, we note that if the statutory language "is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

■ Unlike Song-Beverly, which allows only a buyer of consumer goods to bring an action (Civ. Code, § 1794), Magnuson-Moss permits a "consumer" to bring an action for damages and other relief when a warrantor breaches its obligations under a warranty or under the act. (15 U.S.C. § 2310(d).) The term "consumer" includes not only a "buyer (other than for purposes of resale) of any consumer product," but also "any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person

who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." (15 U.S.C. § 2301(3).)

Magnuson-Moss defines a "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)." (15 U.S.C. § 2301(1).)

Magnuson-Moss is interpreted in 16 Code of Federal Regulations part 700.1 (2006), which provides in pertinent part: "(a) The Act applies to written warranties on tangible personal property which is normally used for personal, family, or household purposes. This definition includes property which is intended to be attached to or installed in any real property without regard to whether it is so attached or installed. This means that a product is a 'consumer product' if the use of that type of product is not uncommon. The percentage of sales or the use to which a product is put by any individual buyer is not determinative. For example, products such as automobiles and typewriters which are used for both personal and commercial purposes come within the definition of consumer product. Where it is unclear whether a particular product is covered under the definition of consumer product, *any ambiguity will be resolved in favor of coverage.* . . . [¶] . . . [¶] (c) The definition of 'Consumer product' limits the applicability of the Act to personal property, 'including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed.' This provision brings under the Act separate items of equipment attached to real property, such as air conditioners, furnaces, and water heaters. [¶] (d) The coverage of separate items of equipment attached to real property includes, but is not limited to, appliances and other thermal, mechanical, and electrical equipment. (It does not extend to the wiring, plumbing, ducts, and other items which are integral component parts of the structure.) State law would classify many such products as fixtures to, and therefore a part of, realty. The statutory definition is designed to bring such products under the Act regardless of whether they may be considered fixtures under state law. [¶] (e) *The coverage of building materials which are not separate items of equipment is based on the nature of the purchase transaction. An analysis of the transaction will determine whether the goods are real or personal property. The numerous products which go into the construction of a consumer dwelling are all consumer products when sold 'over the counter,' as by hardware and building supply retailers. This is also true where a consumer contracts for the purchase of such materials in connection with the improvement, repair, or modification of a home (for example, paneling, dropped ceilings, siding, roofing, storm windows, remodeling).* However, where such products are at the time of sale integrated into the structure of a dwelling they

are not consumer products as they cannot be practically distinguished from realty. Thus, for example, the beams, wallboard, wiring, plumbing, windows, roofing, and other structural components of a dwelling are not consumer products when they are sold as part of real estate covered by a written warranty. [¶] (f) In the case where a consumer contracts with a builder to construct a home, a substantial addition to a home, or other realty (such as a garage or an in-ground swimming pool) the building materials to be used are not consumer products. Although the materials are separately identifiable at the time the contract is made, it is the intention of the parties to contract for the construction of realty which will integrate the component materials. Of course, as noted above, any separate items of equipment to be attached to such realty are consumer products under the Act." (Italics added.)

Elk contends that Atkinson did not purchase the shingles over the counter or specifically contract for the purchase of the shingles in connection with the improvement or repair of the roof. Instead, he contracted to have his house completely reroofed. Elk argues that this distinction is dispositive because Pacific purchased the shingles from the supplier, and installed the shingles on the roof along with the other roofing materials in completing the reroofing contract. Thus, Pacific provided an integrated roofing system. According to Elk, this means that Atkinson did not purchase the shingles or any other consumer product when he contracted for the new roof. Therefore pursuant to 16 Code of Federal Regulations part 700.1(e) and (f) (2006), the roofing shingles are not consumer products under Magnuson-Moss.

In *Muchisky v. Frederic Roofing Co.* (1992) 838 S.W.2d 74 (*Muchisky*), Division 4 of the Missouri Court of Appeals, Eastern District, was faced with the question of whether reroofing of a home is a "consumer product" as defined by Magnuson-Moss so that an action based upon a written contract for reroofing of a home may lie as a matter of law where the written contract contains a 12-year defect-free warranty on workmanship and materials. (838 S.W.2d at p. 76.)

In *Muchisky*, the homeowner brought an action under a reroofing contract against a roofing company for breach of contract, breach of warranty and violation of Magnuson-Moss. (*Muchisky, supra*, 838 S.W.2d at p. 75.) The suit involved a contract to reroof Muchisky's home with one layer of U.S. Intec Brai/Flex, modified bitumen, single-ply system. A jury entered a verdict for the homeowner and the contractor appealed. Specifically, the contractor argued that the court below erred in refusing to direct a verdict at the close of all the evidence as to the count asserted under Magnuson-Moss because the contract sued upon was a "services contract," not a sales contract, and being a services contract, the provisions of Magnuson-Moss did not apply. (838 S.W.2d at p. 75.)

█ The *Muchisky* court conducted an in-depth analysis of 16 Code of Federal Regulations part 700.1(e) and (f) (2006) and concluded that it was "apparent from the FTC regulations that products intended to be attached to or installed in any real property are consumer products subject to the act. Section 700.1(e) attempts to specify what products which become a part of the realty are consumer products and which are not. If the consumer contracts for the purchase of such materials in connection with the improvement, repair or modification of a home (including roofing) then the materials are consumer products subject to the act. However, if *at the time of sale* the products are integrated into the structure of the dwelling, they are not consumer products as they cannot be practically distinguished from realty. The succeeding subsection provides that where the consumer contracts with a builder to construct a home or a substantial addition to a home or similar types of structures, it is deemed to be the intention of the parties to contract for the construction of the realty which will integrate the component materials removing them from coverage under the act." (*Muchisky, supra,* 838 S.W.2d at pp. 77–78.)

Ultimately, the *Muchisky* court concluded that "roofing" was a consumer product under Magnuson-Moss. (*Muchisky, supra,* 838 S.W.2d at p. 78.)

Elk asserts that *Muchisky* has no precedential value here. Furthermore, Elk argues that *Muchisky* was wrongly decided because it renders 16 Code of Federal Regulations part 700.1(f) pointless. We disagree.

█ As we explained in *Atkinson v. Elk Corp., supra,* 109 Cal.App.4th at page 758, footnote 18, "under certain circumstances roof shingles are consumer products under Magnuson-Moss." Accordingly, we must decide if this case presents one of those circumstances.

█ As noted, Magnuson-Moss is interpreted in 16 Code of Federal Regulations, part 700.1 (2006). A close examination of this section reveals that some items that normally or usually become a part of realty when incorporated into a structure are still considered consumer products when their incorporation is part of an improvement, modification or repair of a home. (16 C.F.R. § 700.1(e) (2006) ["The numerous products which go into the construction of a consumer dwelling are all consumer products when sold 'over the counter,' as by hardware and building supply retailers. This is also true where a consumer contracts for the purchase of such materials in connection with the improvement, repair, or modification of a home (for example, paneling, dropped ceilings, siding, *roofing*, storm windows, remodeling," italics added].)

The House Report on Magnuson-Moss reinforces this interpretation. "Under concepts of property law, fixtures such as hot water heaters and air

conditioners when incorporated in a dwelling become part of the real property. It is intended that the provisions . . . continue to apply to such products regardless of how they are classified . . . ." (H.R.Rep. No. 93-1107, 2d Sess. (1974), reprinted in 1974 U.S. Code Cong. & Admin. News, pp. 7702, 7717.)

■ With respect to products that are incorporated into realty, we find that the crucial distinction is the *time of sale*. If the products are purchased in order to add them to an existing dwelling, then the products are consumer products. If, on the other hand, the products are purchased as part of a larger real estate sales contract, or contract for a *substantial* addition to a home, they are not. (16 C.F.R. § 700.1 (e), (f) (2006).)

■ As the *Muchisky* court explained, "It appears that as to products which are becoming a part of realty the distinction drawn is whether the product is being added to an already existing structure or whether it is being utilized to create the structure." (*Muchisky, supra*, 838 S.W.2d at p. 78.)

■ Here Pacific purchased the roof shingles at Atkinson's behest, in order that Pacific would add them to Atkinson's existing home. Although the intent was to incorporate the shingles into the realty, they were not purchased "as part of real estate covered by a written warranty."[9] (16 C.F.R. § 700.1(e) (2006).)

Consequently, we conclude that under the facts of this case, roofing shingles are consumer products under Magnuson-Moss. Accordingly, we reverse the trial court's summary adjudication on this point.

In his second assignment of error, Atkinson contends that his breach of the implied warranty of merchantability claim under Magnuson-Moss is not barred by the statute of limitations.

As noted, in granting summary adjudication of Atkinson's second cause of action under Magnuson-Moss for breach of the implied warranty of merchantability, the trial court reasoned that it was barred because the breach

---

[9] The fact that Pacific purchased the shingles at Atkinson's request is of no matter since Magnuson-Moss requires only that a "consumer," which includes any person to whom such product is transferred during the duration of a written warranty, bring an action for damages and other relief. (15 U.S.C. §§ 2310(d), 2301(3).) We recognize, however, that in *Atkinson v. Elk, supra*, 109 Cal.App.4th at page 751, we determined that Atkinson was a buyer because Pacific was the retail seller since Elk does not sell directly to the public. Under Magnuson-Moss this distinction is not relevant. As noted, even if we were to consider Pacific a buyer who then resold the shingles to Atkinson as part of the reroofing contract, Atkinson could still bring a cause of action under Magnuson-Moss as a person to whom the roof shingles were transferred during the duration of a written warranty. (15 U.S.C. § 2301(3).)

occurred after the expiration of the one-year implied warranty period governed by Civil Code section 1791.1.

Elk argues that Atkinson's cause of action for breach of the implied warranty of merchantability is barred because the alleged breach occurred approximately five and one-half years after the expiration of the one-year warranty period.[10]

Atkinson counters that Magnuson-Moss is "clear that Civil Code section 1791.1 is not applicable in this case.[11] Magnuson-Moss states the duration of the implied warranty is the length of the express warranty, and that any contrary provision is void. (15 U.S.C. § 2308.) Thus, Song-Beverly's one-year limitation cannot limit the implied warranty under Magnuson-Moss as a matter of law."

Atkinson has misread the statute. Title 15 of United States Code section 2308 provides that "[n]o supplier may disclaim or modify (except as provided in subsection (b) of this section) any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer Product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product." (15 U.S.C. § 2308(a).) Subsection (a) does not speak to the duration of the implied warranty of merchantability. However, subsection (b) of section 2308 does speak to the duration of an implied warranty where a written warranty is given. "For purposes of this chapter (other than section 2304(a)(2) of this title), implied warranties *may* be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty." (15 U.S.C. § 2308(b), italics added.)

Contrary to Atkinson's assertions, title 15 United States Code section 2308(b) does not mandate that the length of the implied warranty is the length of the express warranty. "Ordinarily 'may' is a permissive not a mandatory term." (*Bennett v. Panama Canal Co.* (D.C. Cir. 1973) 155 U.S. App.D.C. 11 [475 F.2d 1280, 1282].) "It is true that in statutes the word 'may' is sometimes construed as 'shall.' But that is where the context, or the

---

[10] As Atkinson points out, Elk does not argue that it did not breach the implied warranty of merchantability.

[11] In his opening brief, it appears that Atkinson confuses the implied warranty of merchantability with the statute of limitations under Commercial Code section 2725. In his reply brief, Atkinson apologizes to this court for not properly analyzing the issue and confusing the issue of the duration of the implied warranty of merchantability and the statute of limitations. Accordingly, we do not address Atkinson's arguments in his opening brief.

subject-matter, compels such construction. [Citation.]" (*Farmers Bank v. Fed. Reserve Bank* (1923) 262 U.S. 649, 662–663 [67 L.Ed. 1157, 43 S.Ct. 651].) We do not find this to be such a case. Throughout Magnuson-Moss, the distinction is made between what warrantors and the Federal Trade Commission "shall" do, and what they "may" do.[12] Consequently, we reject Atkinson's assertion that the length of the implied warranty of merchantability must be the length of the written warranty.

Accordingly, we turn to the issue of what is the duration of implied warranty of merchantability under Magnuson-Moss.

 It has been held that state law applies in breach of warranty actions as to both implied and written warranty claims under Magnuson-Moss, except as expressly stated by that act. (*Carlson v. General Motors Corp.* (4th Cir.1989) 883 F.2d 287, 291 ["courts have . . . found it 'beyond genuine dispute that, as to both implied and written warranties, Congress intended the application of state law, except as expressly modified by Magnuson-Moss, in . . . breach of warranty actions' "], citing *Walsh v. Ford Motor Co.*, 257 U.S. App.D.C. 85 [807 F.2d 1000, 1013–14] (D.C. Cir. 1986).) Furthermore, the "term 'implied warranty' means an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." (15 U.S.C. § 2301(7).)

 The California Uniform Commercial Code separates implied warranties into two categories. An implied warranty that the goods "shall be merchantable" and "fit for the ordinary purpose" is contained in California Uniform Commercial Code section 2314.[13] Whereas an implied warranty that the goods shall be fit for a particular purpose is contained in section 2315.

Thus, there exists in every contract for the sale of goods by a merchant a warranty that the goods shall be merchantable. The core test of merchantability is fitness for the ordinary purpose for which such goods are used. (§ 2314.)

---

[12] See, e.g., 15 United States Code sections 2302(a) ("any warrantor warranting a consumer product to a consumer by means of a written warranty shall . . . fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty"), 2302(b)(1)(A) and (B) ("The Commission shall prescribe rules requiring that the terms of any written warranty on a consumer product be made available to the consumer . . . . [¶] The Commission may prescribe rules for determining the manner and form in which information with respect to any written warranty of a consumer product shall be clearly and conspicuously presented . . . ."), 2303(a) ("Any warrantor warranting a consumer product by means of a written warranty shall clearly and conspicuously designate such warranty in the following manner . . . .").

[13] All further statutory references are to the California Uniform Commercial Code.

"Unlike express warranties, which are basically contractual in nature (see Cal. U. Com. Code, § 2313, com.1), the implied warranty of merchantability arises by operation of law. [Citations.] 'Into every mercantile contract of sale the law inserts a warranty that the goods sold are merchantable, the assumption being that the parties themselves, had they thought of it, would specifically have so agreed.' " (*Hauter v. Zogarts* (1975) 14 Cal.3d 104, 117 [120 Cal.Rptr. 681, 534 P.2d 377].) The problem with bringing Atkinson within the purview of section 2314's implied warranty of merchantability is that he was not in direct privity of contract with Elk. "[P]rivity appears to remain a requirement for actions based on the implied warranty of merchantability [citations]." (*Id.* at p. 114, fn. 8.)

We do find this case to be the type of case, however, where the general rule that privity of contract is required should be relaxed. Implied warranties of quality as defined by the Commercial Code derive from express terms. The "contract description" and "the agreement" underlie merchantability. (§ 2314.) The brochure in which Elk advertised its shingles contained an express written warranty for the Prestique I shingles, which stated the length of the warranty to be "30 years: Material/Labor: 5 years: Wind." Elk brought itself into privity of contract with the ultimate consumer, Atkinson, by extending this express warranty. It would be inconsistent to recognize privity existing for breach of express quality warranties under Magnuson-Moss and to reach the opposite conclusion in the same transaction for breach of the implied warranty of merchantability.

Accordingly, we turn our attention to the *duration* on the implied warranty of merchantability.

Under section 2607 a "buyer must, within a reasonable time after he or she discovers or *should have discovered any breach*, notify the seller of breach or be barred from any remedy . . . ." Failure to comply with this provision bars the purchaser from pursing any remedy for the breach. Section 2725 provides that a "breach of warranty occurs when tender of delivery is made, *except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should be discovered.*" (Italics added.)

Thus, the implied warranty of merchantability imposed on Elk an obligation to supply goods, which at the time of sale were fit for the ordinary purpose for which roof shingles are used. Section 2725 provides that a breach of any contract for sale must be commenced within four years after the cause of action accrued. Thus, ordinarily, any breach of the implied warranty of merchantability would have accrued at the time of sale of the shingles to

Pacific Roofing. However, we find nominal support for the proposition that implied warranties of merchantability should have prospective application.

In *Aced v. Hobbs-Sesack Plumbing Co.* (1961) 55 Cal.2d 573 [12 Cal.Rptr. 257, 360 P.2d 897] (*Hobbs*), our Supreme Court squarely confronted the issue in a case arising under the Uniform Sales Act.[14] (55 Cal.2d at p. 580.) Hobbs, a subcontractor, supplied material and labor for a radiant heating system installed in a concrete slab floor of a house constructed by Aced. Approximately, a year after the installation, the homeowner discovered that the tubing had developed leaks. The following year the whole system had to be replaced. One year later, the homeowners filed suit against Aced. Aced filed a cross-complaint against Hobbs for breach of the implied warranty of merchantability. Among other defenses, Hobbs claimed that the implied warranty was breached, if at all, no later than the date of installation. Since Aced's cross-complaint was filed more that four years after that date, Hobbs asserted that the claim was barred by the statute of limitations. (*Id.* at pp. 576–577, 583.)

In rejecting Hobbs's statute of limitations defense, the *Hobbs* court concluded that they were "satisfied . . . that this [was] a case which could properly be found to come within the operation of the principle that, if a warranty relates to a future event before which the defect cannot be discovered by the exercise of reasonable diligence, the warranty, though accompanied by a representation as to present condition, is prospective in character and the statute of limitations begins to run as of the time of that event." (*Hobbs, supra,* 55 Cal.2d at pp. 583–584.)

Hobbs provides support for the proposition that Elk's written affirmance that the length of the warranty for the Prestique I shingles was "30 years: Material/Labor: 5 years: Wind" would include an implied prospective warranty that the roof shingles would not, within a reasonable time, crack and become defective. Furthermore, Magnuson-Moss's reference to limitation of an implied warranty (15 U.S.C. § 2308(b)) suggests that the drafters assumed that implied warranties are prospective in nature having duration beyond the time a product is sold.

Notwithstanding the foregoing, two things lead us to the conclusion that the duration of the implied warranty of merchantability under California law is limited to one year. *Hobbs* was decided before Song-Beverly was enacted in 1970. (Civ. Code, § 1790.) Furthermore, the State of California applied to the Federal Trade Commission, the agency charged with enforcement powers

---

[14] The Uniform Sales Act codified in Civil Code sections 1734–1736 was repealed by Statutes 1963, chapter 819, section 2, page 1997, effective January 1, 1965.

of Magnuson-Moss (15 U.S.C. § 2303(b)), for a determination under Magnuson-Moss that certain provisions of California law, namely Song-Beverly, afforded protection to consumers greater than the requirements of Magnuson-Moss. (41 Fed.Reg. 28361 (July 9, 1976).) As part of that determination, the commission's staff analysis contains the following: "Section 1791.1 [of Song-Beverly] defines 'implied warranties.' [¶] Subsection (a) defines the implied warranty of merchantability and Subsection (b) the implied warranty of fitness. Subsection (c) provides that the duration of an implied warranty shall be coextensive with an express warranty, provided it is reasonable; however, such implied warranty must have a duration of 60 days at a minimum and a year as a maximum. [¶] As defined by section 101(7) of the [Magnuson-Moss] Warranty Act, the term 'implied warranty' means 'an implied warranty arising under state law (as modified by section 108 and 104(a)) in connection with the sale by a supplier of a consumer product.' Staff's view is that the language of Section 101(7) stating that implied warranties 'arise' under state law is evidence of Congressional intent to allow state law to govern creation and duration of implied warranties. The fact that the key Warranty Act provisions regulating limitation of implied warranties as to duration are directed to 'suppliers' (Section 108(a)) and 'warrantors' (Section 104(a)(2)) rather than states buttresses this position. Additionally, it is suggested that if Congress had wanted to affect the duration of implied warranties created under state law it would have done so expressly. Consequently, staff concludes that this California provision is unaffected by the Warranty Act." (41 Fed.Reg. 28362–28363 (July 9, 1976).)

■ "The contemporaneous administrative construction of a statute by those charged with its enforcement and interpretation, while not necessarily controlling, is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized. [Citations.]" (*Cannon v. Industrial Acc. Comm.* (1959) 53 Cal.2d 17, 22 [346 P.2d 1].)

■ Given the foregoing, we are led to conclude that Civil Code section 1791.1 controls the length of the implied warranty of merchantability under Magnuson-Moss.

Under Civil Code section 1791.1, subdivision (c), "[t]he duration of the implied warranty of merchantability . . . shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable; *but in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer.*" (Italics added.)

Accordingly, we conclude that Atkinson's cause of action under the implied warranty of merchantability is barred as a matter of law because Atkinson filed suit more that five and one-half years after the expiration of the one-year warranty period.

### Disposition

As to Atkinson's cause of action for breach of Elk's written warranty, summary adjudication is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed. Costs on appeal to appellant.

Rushing, P. J., and Premo, J., concurred.