Filed 9/3/15  Sharma v. Luong CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RAVI SHARMA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JEAN F. LUONG,<br><br>    Defendant and Respondent. | H039492<br>(Santa Clara County<br>Super. Ct. No. 112-CV-217846) |

Sheila Sharma passed away in November 2010.  Her son, Ravi Sharma, brought a wrongful death action against her primary care doctor, Dr. Jean F. Luong, based on failure to evaluate decedent for urosepsis two years earlier.  We will affirm summary judgment in favor of defendant because plaintiff has failed to demonstrate a triable issue of material fact regarding breach of the standard of medical care.

## I.  FACTUAL BACKGROUND

In December 2008, decedent Sheila Sharma, then 83 years old, was examined by defendant, her primary care physician of many years.  At that time decedent had an extensive medical history including chronic kidney disease, insulin-dependent diabetes mellitus with neuropathy, coronary artery disease, congestive heart failure, and severe labile hypertension.  She had had percutaneous coronary intervention and stenting of her renal artery.  Defendant had referred her to a nephrologist for renal deficiency treatment the previous year.  Decedent underwent a renal perfusion scan and extensive laboratory evaluation during a trip to India in November 2008.  The scan showed 97 percent

perfusion to the left kidney, but a negligibly functioning shrunken right kidney with only 4 percent perfusion. She was prescribed approximately 12 maintenance medications.

According to defendant's handwritten examination notes documenting decedent's December 5, 2008 office visit, plaintiff complained of pain in the right foot, weakness, and fever. Decedent's temperature was 98 degrees, her pulse was 68, and her blood pressure was 90-110/70. She had no cough, and her lungs were clear. Defendant did not note any complaints of burning with urination or frequent urination. Defendant's diagnosis included dehydration and chronic kidney disease. Because of her relatively low blood pressure, defendant advised decedent to decrease her blood pressure medications. Although defendant advised her to finish a course of Zithromax, his notes do not reveal how, when, or why decedent had procured that antibiotic.

According to defendant's notes, a comprehensive metabolic blood panel and hemoglobin A1c blood test were ordered.[1] Those results, reviewed by defendant on December 8, showed out-of-range BUN (urea nitrogen) and creatinine levels. The BUN had improved since her testing a month earlier in India, decreasing from 102 to 54, but her creatinine level had worsened, increasing from 1.5 to 2.8.

According to hospital records, decedent arrived at O'Connor Hospital by ambulance on December 9 complaining of weakness, poor appetite, nausea, vomiting, and chills. Decedent reported shortness of breath while lying down and a cough present for five days. Upon admittance, decedent's blood pressure was 156/101, her pulse was 121, and her respirations were 27 per minute. Blood and urine cultures were ordered because of clinical evidence of sepsis. Decedent's initial lab work revealed a urinary tract infection and acute kidney injury, with a creatinine of 6.5 and a BUN of 107. Decedent was given an intravenous antibiotic (Levaquin) and admitted to the intensive

---

[1] The parties dispute whether the notes also show defendant ordering a comprehensive blood count.

2

care unit.[2]  The attending physician ordered Ceftriaxone for the urinary tract infection, and a renal specialist later prescribed Gentamicin.

On December 13, a doctor consulting on decedent's septic condition reported that blood and urine cultures showed urosepsis—a secondary bacterial infection that spread from the urinary tract to the blood stream—caused by ESBL-producing E. coli.  The Levaquin was discontinued and decedent was started on Imipenem to treat the sepsis.[3]  As of December 13, decedent was stable on that medication and was clinically improving.

Decedent's hospital stay was difficult due to urosepsis and other complex medical issues.  Decedent was monitored by a cardiologist, an infectious disease specialist, an endocrinologist, an otolaryngologist, a neurologist, and a gastroenterologist.  She required hemodialysis three times weekly and tube feeding.  Decedent was discharged to a nursing home on February 2, 2009.

At plaintiff's request, on March 15, 2009 decedent's son-in-law, Dr. Vibhay Bhatnagar, provided a letter opinion regarding the medical care decedent received on December 5, 2008.  In Dr. Bhatnagar's opinion, which he represented was based solely on his review of defendant's medical records, defendant had breached the standard of medical care by failing to diagnose and treat decedent for sepsis.  Dr. Bhatnagar opined that the appropriate course of action would have been "to admit [decedent] to the hospital, hydrate her intravenously, obtain culture and treat infection appropriately."  He concluded that defendant's negligence caused decedent irreversible kidney damage and long-term health issues.

---

[2] Hospital records indicate that decedent finished the Zithromax on December 6, and, on her own accord, began taking Levaquin 500 daily.  Like the Zithromax, the source of the Levaquin is unknown.

[3] Hospital records do not show when urosepsis was identified or when decedent was started on Imipenem.

3

## II.  TRIAL COURT PROCEEDINGS

In November 2009, decedent filed a medical malpractice suit regarding the December 5 care and treatment she received from defendant.  One year later, while her motion for summary judgment was pending, decedent passed away and her complaint was dismissed without prejudice.

Plaintiff filed the instant action on January 31, 2012.  The first amended complaint alleged negligence, survivorship, and wrongful death causes of action against defendant.  The factual basis for plaintiff's claims was identical to that alleged in decedent's earlier malpractice action.  Specifically, plaintiff alleged that decedent presented on December 5 "complaining of fevers, chills, generalized weakness and low blood pressure" and that, based on those symptoms, an "evaluation should have been made to rule out possibility of sepsis since decedent was at risk for development of same due to her co-morbidities." Plaintiff alleged that defendant breached the standard of medical care "by failing to appropriately and/or timely evaluate, test, diagnose, and/or treat decedent's condition by failing to consider and appropriately evaluate urosepsis … ."  Plaintiff further alleged that decedent died on November 14, 2010 "due to kidney failure and cardiac arrest, a direct result of the septicemia which resulted in renal failure and dialysis, all as a consequence of the treatment received from [defendant] … on December 5, 2008."

The trial court dismissed the negligence and survivorship claims as time-barred, and defendant filed a motion for summary judgment on the remaining wrongful death cause of action.  In support of that motion, defendant submitted the memorandum of points and authorities, statement of undisputed facts, and supporting expert declaration of Dr. Michael Podlone, all filed in the earlier malpractice case.  Defendant also refiled the documents supporting the Podlone declaration, including decedent's medical records retained by both defendant's office and the hospital, and Dr. Bhatnagar's March 2009 opinion letter.  Defendant argued that he complied with the standard of care and that no act or failure to act caused decedent's injuries.

4

Plaintiff opposed the motion with a declaration by Dr. Bhatnagar, arguing that the declaration created a triable issue of material fact regarding the breach and proximate cause of decedent's death. On reply, defendant argued that plaintiff failed to establish triable issues of material fact regarding breach or injury. He challenged the Bhatnagar declaration on foundational grounds and for failing to establish a causal link between defendant's treatment and decedent's eventual death. The trial court granted defendant's motion finding plaintiff failed to raise a triable issue of material fact with respect to whether defendant's December 5 care and treatment caused decedent's death. Plaintiff appeals from the ensuing judgment.

## III.  DISCUSSION

### A.    STANDARD OF REVIEW

"A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)  The burden of persuasion remains with the party moving for summary judgment. (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850, 861 (*Aguilar*).)  When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true (*id*. at p. 851), or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff " 'does not possess and cannot reasonably obtain, needed evidence.' " (*Id*. at p. 854.)  We review the record and the determination of the trial court de novo. (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476.)" (*Kahn v. East Side Union High School Dist*. (2003) 31 Cal.4th 990, 1002–1003.)  We are not bound by the trial court's stated reasons for its grant of summary judgment. (*Atkinson v. Elk Corp. of Texas* (2006) 142 Cal.App.4th 212, 222.)

5

In performing our independent review of a defendant's summary judgment motion, "we identify the issues framed by the pleadings since it is these allegations to which the motion must respond … ." (*AARTS Productions, Inc. v. Crocker National Bank* ( 1986) 179 Cal.App.3d 1061, 1064.) A defendant moving for summary judgment has the burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (*o*); *Aguilar, supra,* 25 Cal.4th at p. 850.) If a defendant's moving papers make a prima facie showing that justifies a judgment in its favor, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (*o*)(2); *Aguilar*, at p. 850.)

In determining whether the parties have met their respective burdens, we must " ' consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation] and must view such evidence [citations] and such inferences [citations] in the light most favorable to the opposing party." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850, fn. omitted.) Thus, a party "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact." (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)

**B.  PLAINTIFF FAILED TO ESTABLISH A TRIABLE ISSUE REGARDING BREACH OF THE STANDARD OF MEDICAL CARE**

Defendant's motion for summary judgment was directed at two elements of the wrongful death cause of action—breach of the standard of care in defendant's December 2008 diagnosis and treatment, and the causal link between defendant's conduct and resulting injury, which defendant identified not as death, but as "irreversible [kidney]

6

damage … very high morbidity, and long term health issues." Plaintiff opposed the motion, claiming that the Bhatnagar declaration raised triable issues of material fact not only as to breach but also as to whether decedent died as a result of that breach. On reply, defendant challenged the Bhatnagar declaration, arguing that it failed to establish a triable issue regarding a causal connection between decedent's death and the care provided by defendant.

The trial court ruled that plaintiff failed to raise a triable issue of material fact "with respect to whether Defendant's care and treatment of the decedent on December 5, 2008 caused her death." It is unclear whether the trial court found that plaintiff (1) failed to rebut defendant's showing that defendant did not breach the standard of medical care; (2) failed to rebut defendant's showing that defendant did not cause decedent's kidney damage, morbidity, and long-term health issues; or (3) failed to establish a nexus between the injuries described by defendant and decedent's eventual demise.[4] As we will find no triable issue of material fact as to the first basis, we need not address the second and third possible bases for the trial court's ruling.

Defendant's expert, Dr. Podlone, opined that defendant complied with the standard of care. He explained that decedent, who had recently returned from a trip to India, reported feeling feverish and weak. Her vital signs were stable, her temperature was 98, and no tachycardia or weight loss was reported. Decedent was taking an antibiotic used for respiratory infections, but she did not report any cough, her chest was clear, and her blood pressure was low. Defendant's diagnosis included dehydration, which explained decedent's low blood pressure, and chronic kidney disease. According to Dr. Podlone, "[p]atients … who present with sepsis are typically direly ill and look quite sick," and there was nothing to suggest that decedent was septic on December 5,

_____

[4] Although a reporter was present at the summary judgment hearing, plaintiff elected to proceed on appeal without providing the reporter's transcript.

7

and had she actually presented with sepsis and low blood pressure, it is unlikely she would have survived until December 9.  In Dr. Podlone's opinion, defendant's treatment of decedent, including his decision to have decedent finish the Zithromax and to adjust her blood pressure medications, complied with the standard of medical care.

Plaintiff's expert, Dr. Bhatnagar, agreed that decedent was appropriately diagnosed with dehydration, and plaintiff does not dispute defendant's other noted diagnoses—chronic kidney disease, hypertension, diabetes, and peripheral artery disease. However, while Dr. Podlone concluded that defendant's treatment plan—to complete her course of antibiotics and reduce her blood pressure medicine—met the standard of care, Dr. Bhatnagar opined that defendant should have hospitalized decedent.  According to Dr. Bhatnagar, "there was unquestionable breach in standard of medical care both in timely diagnosis, work up and treatment of [decedent]," and "[a]ppropriate management … would be to admit her to the hospital, hydrate her intravenously, obtain culture and treat infection appropriately."

Dr. Bhatnagar based his opinion that the "possibility of sepsis had to be entertained" on patient complaints of "shaking chills, generalized weakness, episodes of near syncope," and blood pressure which was noted to be low.  Dr. Bhatnager also described Zithromax being taken due to the complaints of fever and chills.  We find no factual support in the record for Dr. Bhatnagar's assertions that decedent complained to defendant of "shaking chills" and "episodes of near syncope," nor that she was taking Zithromax to address those symptoms.  Dr. Bhatnagar's opinion was "derived entirely from review of records submitted … by [defendant's] office," and the records of decedent's December 5 office visit make no mention of shaking or chills or syncope, nor do they reveal why decedent had been taking Zithromax.

Plaintiff acknowledges that the additional facts relied on by Dr. Bhatnagar are not found in defendant's medical records.  Discounting the omissions, he suggests that Dr. Bhatnagar may have learned of those facts from decedent, or from plaintiff who was

present during the December 5 examination.  While we construe a declaration opposing a motion for summary judgment liberally, we cannot take the foundational leap urged by plaintiff.  (*Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 743 [expert may not base opinion on assumptions of fact without evidentiary support].)  It is apparent from his declaration that the "shaking chills" and "near syncope" relied on by Dr. Bhatnagar were essential to his conclusion that that defendant breached the standard of care.  Those facts are without evidentiary support, and Dr. Bhatnagar's opinion on breach of the standard of medical care is unsupportable in their absence.

The Podlone declaration made a prima facie showing that defendant did not breach the standard of medical care.  Plaintiff failed to rebut that showing.  Defendant was therefore entitled to summary judgment.[5]

## IV.  DISPOSITION

The judgment is affirmed.

---

[5] We reject plaintiff's argument that defendant waived the right to object to the Bhatnagar declaration on appeal by failing to present his objections to the trial court in accordance with the California Rules of Court, rule 3.1354.  Regardless of how defendant presented his objections to the Bhatnagar declaration in the trial court, that court granted summary judgment in favor of defendant based on plaintiff's deficient expert declaration. Plaintiff has placed the sufficiency of the Bhatnagar declaration in issue on appeal by arguing that it creates a triable issue of material fact, and defendant is entitled to defend the trial court's ruling by countering plaintiff's claims.

_____

Grover, J.

**WE CONCUR:**

_____

Bamattre-Manoukian, Acting P.J.

_____

Mihara, J.